## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

LUISA AVILES RIVERA, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

CAINE & WEINER COMPANY INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

Case No.: 20-cv-671

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

### INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

### JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

### PARTIES

3.      Plaintiff Luisa Aviles Rivera is an individual who resides in the Western District of Wisconsin (Dane County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5.      Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301, in that the debt Defendants sought to collect from Plaintiff arose from a consumer transaction with an agreement to defer payment.

6.     Defendant Caine & Weiner Company, Inc. ("CWC") is a debt collection agency with its primary offices located at 5805 Sepulveda Boulevard Floor 4, Sherman Oaks, California 91411.

7.     CWC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.     CWC is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.     CWC is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions.

10.     CWC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103.

## FACTS

11.     On or about September 25, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt.  A copy of this letter is attached to this Complaint as Exhibit A.

12.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred for auto insurance premiums, used exclusively for personal, family, and household purposes.

13.     Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

14.     Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

2

15.     Upon information and belief, Exhibit A is the first written communication CPC mailed to Plaintiff regarding this alleged debt.

16.     Exhibit A includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

***Confusing, Misleading, and Unfair Representations About the Identity of the Creditor***

17.     The header in Exhibit A includes the following:

Creditor: PROGRESSIVE INSURANCE
          ███6263
          Artisan and Truckers Casualty Co
          Personal Auto-2017NISSA

Amount Due:    $150.52
C&W Account #: ███5850

18.     The first sentence in the body of Exhibit A states that the "account has been listed with our company for collection" but does not state who "listed" the account:

Your account has been listed with our company for collection.

19.     Exhibit A does not clearly identify the creditor to whom the debt is owed.

20.     The header in Exhibit A identifies two possible creditors: "PROGRESSIVE INSURANCE" and "Artisan and Truckers Casualty Co."

21.     An unsophisticated consumer would not be able to determine whether the debt was owed to "PROGRESSIVE INSURANCE" or "Artisan and Truckers Casualty Co."

22.     Even an unsophisticated consumer who recognized the debt as originally being an unpaid Progressive Insurance premium would not understand the relationship between

3

"PROGRESSIVE INSURANCE" and "Artisan and Truckers Casualty Co" and would not know if the debt she believed to be a single debt was now owed to two separate companies.  *See Taylor v. Alltran Fin., LP*, No. 18-cv-306-JMS-MJD, 2018 U.S. Dist. LEXIS 159862, at \*8-9 (S.D. Ind. Sept. 19, 2018); *see also Braatz v. Leading Edge Recovery Solutions, LLC*, No. 11-cv-3835, 2011 U.S. Dist. LEXIS 123118, at \*4 (N.D. Ill. Oct. 20, 2011) ("the dunning letter identifies two creditors.  This is an apparent contradiction that the debt collector fails to explain. … Such confusion might cause an unsophisticated consumer to be concerned about the possibility that she was being defrauded or that she might pay the incorrect creditor and continue to have outstanding debt.")

23.     15 U.S.C. § 1692g(a)(2) requires that, within five days of the initial communication with a consumer, debt collectors provide written notice containing "the name of the creditor to whom the debt is owed."

24.     The Seventh Circuit previously held that a debt collection letter failed to identify the creditor when it stated the letter was being mailed "Re: Asset Acceptance, LLC Assignee of AMERISTAR" and that the account had been "transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP."  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320 (7th Cir. 2016).

25.     The Seventh Circuit explained that the problem in *Janetos* was that:

Nowhere did the letter say that Asset Acceptance currently owned the debts in question. Asset Acceptance was identified as the "assignee" of another company, not as the current creditor or owner of the debt.  The letter went on to say that the referenced account "has been transferred from Asset Acceptances, LLC, to Fulton, Friedman & Gullace, LLP." These statements simply did not say who currently owned the debts.  Instead, each recipient was left to guess who owned the debt following the "transfer" of the "account."

. . .

4

Since the name was on the letters, some might correctly guess that Asset Acceptance was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided.  Compliance with the clear requirements of § 1692g(a)(2) demands more.

*Janetos*, 825 F.3d at 321, 323.

26.     Courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal v. GMAC Mortg.*, 2013 U.S. Dist. LEXIS 105355, at *12-13 (N.D. Ill. July 29, 2013); *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by,* 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11.

27.     Plaintiff was confused and misled by Exhibit A.

28.     The unsophisticated consumer would be confused and misled by Exhibits A.

*Unfair Collection Practices and Third-Party Disclosure of the Debt*

29.     Defendant mailed Exhibit A in a "window envelope" – an envelope containing transparent, "glassine" windows displaying Plaintiff's name and address and Defendant's return address.

30.     Also printed on Exhibit A, immediately above Plaintiff's name and address and in an all-caps font, is the language "PERSONAL & CONFIDENTIAL."

31.     The "PERSONAL & CONFIDENTIAL" language was visible through the glassine window. It appears as follows:

P.O. Box 55848
Sherman Oaks, CA 91413
CHANGE SERVICE REQUESTED


September 25, 2019


PERSONAL & CONFIDENTIAL
LUISA AVILES RIVERA
5321 Brody Dr Unit 101
Madison WI 53705-1388

32.     Plaintiff opened the envelope containing Exhibit A. but did not retain the envelope, which contained the glassine window through which the "PERSONAL & CONFIDENTIAL" language was visible.

33.     The FDCPA, 15 U.S.C. § 1692f, generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

6

34.     15 U.S.C. § 1692f(8) expressly prohibits:

> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

35.     Like 15 U.S.C. § 1692f(8), Wis. Stat. § 427.104(1)(e) prohibits debt collectors from disclosing "information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information."

36.     The Seventh Circuit recently explained that the plain language of 15 U.S.C. § 1692f(8) prohibits debt collectors from printing *any* extraneous text in a way that it is visible on an envelope containing a dunning letter. *Preston v. Midland Credit Mgmt.*, 948 F.3d 772, 782-84 (7th Cir. 2020).

37.     *Preston* addressed a dunning letter in an envelope containing the language "TIME SENSITIVE DOCUMENT." *Id.* at 776.

38.     The Seventh Circuit held that any extraneous language visible on an envelope containing a debt collection letter violates 15 U.S.C. § 1692f(8) as a matter of law:

> The first sentence of § 1692f prohibits debt collectors from using unfair or unconscionable means to collect a debt. That prohibition is then followed by a specific list of conduct that violates the section. Among those acts specifically listed is the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer ... except that a debt collector may use his business name" under prescribed circumstances. 15 U.S.C. § 1692f(8). On its face, the prohibition is clear: use of any language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).

*Id.* at 781.

7

39.     In *Preston*, the Seventh Circuit expressly rejected the "benign language

exception" followed by some other courts, holding that Congress created a bright-line rule:

> The statutory language [of § 1692f(8)] does, in fact, prohibit debt
> collectors from sending communications to consumers in envelopes
> bearing symbols that are indicative of debt collection. The language of the
> statute simply draws a clear line to ensure that consumers' rights are not
> lost in the interpretation of more subtle language. …
>
> In providing certainty, this provision furthers the FDCPA's overall
> purpose of "eliminat[ing] abusive debt collection practices by debt
> collectors" and "insur[ing] that those debt collectors who refrain from
> using abusive debt collection practices are not competitively
> disadvantaged."
>
> In sum, the meaning of § 1692f(8) is clear: When a debt collector
> communicates with consumers through the mails, it may not use any
> language or symbol on the envelope except for its business name or
> address, as long as the name does not indicate that he is in the debt
> collection business. Turning to the facts here, there is no question that the
> language "TIME SENSITIVE DOCUMENT" appears on the envelope
> enclosing a communication to a consumer. It is equally apparent that the
> language at issue does not fall within the itemized exception set forth in
> subsection (8): It is not Midland's name nor its address. The inclusion of
> this phrase thus violates § 1692f(8), and the district court erred in
> dismissing the claim set forth in Count I of Mr. Preston's complaint.

*Id.* at *783-84; *cf. Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir.

2004); *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004).

40.     As in *Preston*, the "PERSONAL & CONFIDENTIAL" language on <u>Exhibit A</u>

violates the plain language of 15 U.S.C. § 1692f(8). *Preston*, 948 F.3d at 783-84.

41.     There is no artificial distinction between language printed directly on an envelope

itself and language printed on the dunning letter that is visible through the envelope's glassine

window. The purpose of 15 U.S.C. § 1692f(8) is to prohibit the disclosure of information to

third parties. Indeed, the "TIME SENSITIVE DOCUMENT" language at issue in *Preston* was

actually printed on an internal envelope that was itself visible through the glassine window of the

8

envelope that actually contained the postage.  *Preston*, 948 F.3d at 777; *see also Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) (disclosure through window envelope "implicates a core concern animating the FDPCA—the invasion of privacy."); 15 U.S.C. § 1692c(b) (prohibiting debt communication with third parties other than those specified in the statute).

42.     Further, it is not difficult for a debt collector to comply with 15 U.S.C. § 1692f(8). Debt collectors must simply refrain from printing extraneous information on the envelopes or allowing such information to show through the glassine windows of envelopes.

43.     Making the "PERSONAL & CONFIDENTIAL" language visible through the glassine window put Plaintiff at risk of third-party disclosure that Defendant was collecting an alleged debt from Plaintiff.  Once Plaintiff received <u>Exhibit A</u> there was no way to cure the harm and embarrassment caused by the third-party disclosure.

### *The FDCPA*

44.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v.*

*Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at \*6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at \*8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 \*21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 \*8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 \*9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229,

2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information.")*; Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of

11

information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

47.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48.    15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

49.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

50.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

51.    15 U.S.C. § 1692f(8) specifically prohibits "Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

52.    15 U.S.C. § 1692g(a) states:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall … send the consumer a written notice containing—

12

(2) the name of the creditor to whom the debt is owed;

### *The WCA*

53.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

54.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

55.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

56.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).   Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

57.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

58.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

13

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

59.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

60.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*; *see also, Schmitz v. Valentine & Kebartas, LLC*, No. 18-cv-15, 2019 U.S. Dist. LEXIS 209489, at *6 (E.D. Wis. Dec. 5, 2019).

61.     Wis. Stat. § 427.104(1)(e) states that a debt collector may not: "Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information. This paragraph does not prohibit the disclosure to another person of information permitted to be disclosed to that person by statute." *See also* Wis. Admin. Code § DFI-Bkg. 74.16(6) (similarly prohibiting third-party disclosure of "information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information.").

14

62.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

63.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

64.     The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed collection agencies, has found that collection agencies "can reasonably be expected to threaten or harass the customer" when they engage in "conduct which violates the Federal Fair Debt Collection Practices Act."   Wis. Admin. Code § DFI-Bkg. 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

65.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66.     Exhibit A fails to clearly identify the creditor. Identifying two entities that may be the creditor is deceptive, misleading, confusing, and unfair to the unsophisticated consumer.

67.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(2).

## COUNT II – FDCPA

68.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69.     Exhibit A contains extraneous text, visible on the outside of the envelope through the glassine window, which states: "PERSONAL & CONFIDENTIAL."

70.     The use of such extraneous text on an envelope containing a dunning letter, or visible on the front of the envelope through a glassine window, violates 15 U.S.C. § 1692f(8) as a matter of law. *Preston*, 948 F.3d at 782-84.

71.     Defendant violated 15 U.S.C. §§ 1692f and 1692f(8).

## COUNT III – WCA

72.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73.     Defendant is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions.

74.     Exhibit A identifies the creditor of the debt in a way that is deceptive, misleading, confusing, and unfair to the unsophisticated consumer.

75.     Exhibit A contains extraneous text, visible on the outside of the envelope through the glassine window, which states: "PERSONAL & CONFIDENTIAL."

76.     The use of such extraneous text on an envelope containing a dunning letter, or visible on the front of the envelope through a glassine window, violates 15 U.S.C. § 1692f(8) as a matter of law.

77.     Exhibit A violates the FDCPA.

78.     Defendant violated Wis. Stat. §§ 427.104(1)(e), 427.104(1)(g), 427.104(1)(h), and Wis. Admin. Code §§ DFI-Bkg. 74.16(6) and 74.16(9).

## CLASS ALLEGATIONS

79.     Plaintiff brings this action on behalf of a class, consisting of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letters by Defendant in the form of Exhibit A to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) between July 21, 2019 and July 21, 2020, inclusive, and (e) such letter was not returned by the postal service.

16

80.     The Class is so numerous that joinder is impracticable.   Upon information and belief, there are more than 50 members of the Class.

81.     There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA and/or the WCA.

82.     Plaintiff's claims are typical of the claims of the Class members.   All are based on the same factual and legal theories.

83.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

84.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

85.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     injunctive relief;

(d)     attorneys' fees, litigation expenses and costs of suit; and

(e)     such other or further relief as the Court deems proper.

Dated: July 21, 2020

**ADEMI & O'REILLY, LLP**

By:   /s/ John D. Blythin
      John D. Blythin (SBN 1046105)
      Mark A. Eldridge (SBN 1089944)
      Jesse Fruchter (SBN 1097673)
      Ben J. Slatky (SBN 1106892)
      3620 East Layton Avenue
      Cudahy, WI 53110
      (414) 482-8000
      jblythin@ademilaw.com
      meldridge@ademilaw.com
      jfruchter@ademilaw.com
      bslatky@ademilaw.com